UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| In the Matter of: | : | Chapter 13 |
| | : | |
| BOBBY E. WILLIAMSON and | : | |
| WENDY S. WILLIAMSON, | : | |
| | : | |
| Debtors | : | Case No. 01-30762 RFH |
| | : | |
| BOBBY E. WILLIAMSON and | : | |
| WENDY S. WILLIAMSON, | : | |
| | : | |
| Plaintiffs | : | |
| | : | |
| v. | : | |
| | : | |
| WASHINGTON MUTUAL | : | Adversary Proceeding |
| HOME LOANS, INC., | : | No. 07-3034 |
| | : | |
| Defendant | : | |

BEFORE

ROBERT F. HERSHNER, JR.
UNITED STATES BANKRUPTCY JUDGE

COUNSEL:

| | |
|---|---|
| Plaintiffs: | Barry Gordon Irwin<br>Post Office Box 140<br>Hull, Georgia 30646-0140 |
| Defendant: | Thomas F. Bohan<br>Post Office Box 26937<br>Macon, Georgia 31221 |
| Chapter 13 Trustee: | Tony D. Coy<br>Post Office Box 954<br>Macon, Georgia 31202 |

# MEMORANDUM OPINION

Bobby E. Williamson and Wendy S. Williamson, Plaintiffs, filed with the Court on July 24, 2007, their Complaint For Declaratory Judgement, For Order Compelling Filing Of Deed In Accordance With Confirmed And Completed Chapter 13 Plan, For Damages, And For All Fees And Costs Associated With This Action. Washington Mutual Home Loans, Inc., Defendant, filed a response on September 6, 2007. Plaintiffs' complaint came on for trial on April 24, 2008. The Court, having considered the evidence presented, the arguments of counsel, and the record in Plaintiffs' bankruptcy case, now publishes this memorandum opinion.

## FINDINGS OF FACT

In 1999, Plaintiffs purchased an unimproved 11.38 acre parcel of land (hereafter the "realty"). The Bank of Danielsville[1] financed the purchase. Plaintiffs executed a mortgage[2] dated May 3, 1999, in favor of the bank pledging the realty as security for their obligation. The mortgage shows the amount of indebtedness to be $46,779.10. During all relevant time, Plaintiffs have not owned any other realty.

In January 2000, Plaintiffs purchased a new double-wide mobile home. The

---

[1] The Bank of Danielsville is now known as Century South Bank of Danielsville. The Court will refer to the bank as the "Bank of Danielsville."

[2] The security instruments at issue are "deeds to secure debt." Since Plaintiffs and Defendant refer to the security instruments as mortgages, the Court, to avoid confusion, will also refer to the security instruments as mortgages.

Bank of Danielsville financed the purchase. Plaintiffs granted the bank a security interest on their mobile home. The bank's security interest is shown on a Certificate of Title.[3] Plaintiffs moved the mobile home onto the realty. Mr. Williamson testified that the monthly payments on the obligation were about $700. The mobile home has been Plaintiffs' principal residence since April 2000.[4]

Mr. Williamson had a number of other loans at the Bank of Danielsville.[5] Some of the loans were taken out to make improvements to the realty, including drilling a well and installing a septic tank. Mr. Williamson wanted to consolidate his loans into a single loan. The Bank of Danielsville referred him to Taylor, Bean, & Whitaker Mortgage Corporation (hereafter "Taylor Bean"). In April 2000, Taylor Bean made a loan to Mr. Williamson.[6] Mr. Williamson was to repay the principal, $104,000, plus interest by making monthly payments of some $1,100 for 15 years. Ms. Williamson testified that insurance on the mobile home was included in the monthly payments to Defendant.[7] Mr. Williamson executed a mortgage dated

---

[3] A Certificate of Title is used to perfect a security interest on certain personal property.

[4] Mr. Williamson testified that Plaintiffs were trying to get electrical service "hooked up" in April 2000.

[5] It is unclear whether Ms. Williamson was obligated on the loans.

[6] Part of the proceeds from the loan from Taylor Bean apparently was used to satisfy the mortgage on the realty in favor of the Bank of Danielsville.

[7] Ms. Williamson testified that Plaintiffs now make their insurance payments to a third party.

April 27, 2000, in favor of Taylor Bean pledging the realty as security for his obligation. Ms. Williamson did not execute the mortgage nor is her name shown on the mortgage. Taylor Bean assigned the loan and the mortgage to Defendant.

Plaintiffs obtained a loan dated May 22, 2000, from the Bank of Danielsville. The loan is a "renewal" of three prior loans.[8] Plaintiffs were to pay the principal, $22,099.30, plus interest by making 35 monthly payments of $400 and by making a balloon payment for the unpaid balance in April 2003. This obligation was secured by Plaintiffs' mobile home and by an automobile and a pickup truck owned by Mr. Williamson.[9]

Mr. Williamson now owed an obligation to Defendant which was secured by a mortgage on the realty. The monthly payments on this obligation were about $1,100. Plaintiffs owed an obligation to the Bank of Danielville which was secured by their mobile home and by an automobile and a pickup truck owned by Mr. Williamson. The payments on this obligation were $400 per month plus a balloon payment at maturity.

Plaintiffs had financial problems and filed a petition under Chapter 13 of the

---

[8] The three prior loans are identifiable solely by their loan numbers.

[9] Attached to the Bank of Danielsville's proof of claim is a copy of a mortgage on the realty which is signed by Plaintiffs and dated May 22, 2000. The copy is not notarized, is not signed by an official witness, and has no recording information. A handwritten note on the promissory note dated May 22, 2000 suggests that this mortgage was "not finalized."

4

Bankruptcy Code on June 7, 2001. Plaintiffs offered to cure the arrearage on the mortgage executed by Mr. Williamson by making payments to Defendant through their proposed Chapter 13 plan. Plaintiffs offered to make the regular monthly payments on the mortgage directly to Defendant.[10] Plaintiffs in fact continued, for several months, to make their regular monthly payments directly to Defendant. The proposed Chapter 13 plan provides in part "Confirmation of this plan will extinguish the second lien on [Plaintiffs'] residence held by [the Bank of Danielsville] due to the lack of value to support the claimed lien."

On August 9, 2001, Defendant filed a proof of claim asserting a secured claim of $104,677.61. A copy of the mortgage executed by Mr. Williamson is attached to Defendant's proof of claim. Neither Plaintiffs nor the Chapter 13 trustee asserted an objection to the proof of claim.

Plaintiffs filed on December 28, 2001, a proposed modified Chapter 13 Plan "prior to confirmation."[11] Although served with the proposed plan, Defendant did not assert an objection. The Court entered an order on March 6, 2002, confirming Plaintiffs' modified Chapter 13 plan which provides in relevant part:

**<u>Chapter 13 Plan</u>**

. . .

---

[10] This is known as making payments "outside the plan."

[11] 11 U.S.C.A. § 1323(a), (b) (West 2004) (debtor may modify proposed Chapter 13 plan prior to confirmation; the plan as modified becomes the plan).

(2) From the payments so received, the trustee shall make disbursements as follows:

. . .

(c) After the above-listed payments, payments to secured creditors whose claims are duly proven as allowed as follows:

| NAME OF CREDITOR | AMOUNT DUE | VALUE | COLLATERAL | INTEREST | PAYMENT AMOUNT |
|---|---|---|---|---|---|
| Washington Mutual | $104,677.61 | $22,008.00 | 11 acres of land | 9.5% | $704.98/mo. |
| . . . | | | | | |
| [Bank of Danielsville] | $20,274.43 | $25,000.00 | double-wide mobile home | | |
| | " | $1,600.00 | 1991 GMC Sierra pickup | | |
| | " | $1,845.00 | 1994 Plymouth Acclaim auto | | |
| Total value loan #56556 | " | $28,445.00 | [total] | 9.5% | $590.35/mo. |

Through their Chapter 13 plan, Plaintiffs sought to split or bifurcate the obligation owed to Defendant of $104,677.61 into a secured part ($22,008) and an unsecured part ($82,669.61). Plaintiffs were to pay the secured part ($22,008) plus interest through their Chapter 13 plan. No payments were to be made on the unsecured part. After their plan was confirmed, Plaintiffs made no further monthly payments directly to Defendant. The confirmed Chapter 13 plan does not state that Defendant's mortgage was to be satisfied or extinguished upon completion of the plan. Plaintiffs were to pay in full their obligation of $20,274.43 plus interest to the Bank of Danielsville which was secured by their mobile home and by Mr. Williamson's automobile and pickup truck.

Plaintiffs completed their Chapter 13 plan payments in 2005. On March 29, 2005, the Bank of Danielsville released its security interest on Plaintiffs' mobile home.

On June 28, 2005, the Court entered an order granting Plaintiffs a Chapter 13 discharge, a final decree was entered, and Plaintiffs' Chapter 13 case was closed.

Plaintiffs asked Defendant to release its mortgage on the realty. Defendant refused. The Court entered an order on March 1, 2007, reopening Plaintiffs' Chapter 13 case. Plaintiffs filed this adversary proceeding on July 24, 2007.

## CONCLUSIONS OF LAW

In this adversary proceeding, Plaintiffs contend that the mortgage in favor of Defendant was satisfied upon the completion of their Chapter 13 plan. Plaintiffs demand that Defendant release its mortgage. Defendant contends that its claim is secured solely by real property that is Plaintiffs' principal residence and that its mortgage "survived" the completion of Plaintiffs' Chapter 13 plan.

Section 1322(b)(2) of the Bankruptcy Code provides:

> **§ 1322.   Contents of plan**
>
> . . .
>
> **(b)** Subject to subsections (a) and (c) of this section, the plan may—
>
> . . .
>
> **(2)** modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of

          unsecured claims, or leave unaffected the rights of holders of any class of claims;

11 U.S.C.A. § 1322(b)(2) (West 2004)

    If Defendant's secured claim is protected by §1322(b)(2), then Plaintiffs cannot satisfy the mortgage simply by paying the alleged value of the realty ($22,008). Rather, Plaintiffs must pay the full amount of Defendant's claim ($104,677.61). It is undisputed that Plaintiffs have not paid the full amount of Defendant's claim.

    Plaintiffs contend that Defendant is bound by the provisions of their confirmed Chapter 13 plan.[12] Plaintiffs contend that the mortgage was satisfied upon the completion of their Chapter 13 plan. Plaintiffs' confirmed Chapter 13 plan does not provide that the mortgage was to be satisfied or that Defendant was to release the mortgage.

    In <u>McCorkle v. Scott</u>, (<u>In re Scott</u>),[13] a mortgage in favor of McCorkle[14] was secured by the debtors' principal residence. The debtors' confirmed Chapter 13 plan provided that the debt to McCorkle's predecessor (hereafter "McCorkle") was disputed, that no payment was to be made to McCorkle, and that McCorkle's mortgage was to be satisfied of record upon completion of the plan. McCorkle did not object to

---

[12] 11 U.S.C.A. § 1327(a) (West 2004) (provisions of confirmed Chapter 13 plan bind debtor and each creditor, whether or not creditor's claim is provided for by plan and whether or not creditor has objected to, accepted, or rejected the plan).

[13] 295 B.R. 686 (Bankr. M. D. Ga. 2003).

[14] McCorkle was the successor in interest to Homes of American, Inc.

8

confirmation of the debtors' Chapter 13 plan. The debtors received their Chapter 13 discharge and their case was closed. The debtors and McCorkle disagreed as to whether McCorkle's mortgage survived the confirmation of the debtors' Chapter 13 plan and the debtors' subsequent discharge in bankruptcy. This Court, relying on a binding decision by the Eleventh Circuit Court of Appeals,[15] held that although McCorkle was bound by the terms of the confirmed plan, that McCorkle's secured claim survived the confirmed Chapter 13 plan and that McCorkle retains his rights under the mortgage until his secured claim is satisfied in full.

Turning to the case at bar, the Court is persuaded that if Defendant's claim is secured solely by real property that is Plaintiffs' principal residence, then Defendant's mortgage survived confirmation of Plaintiffs' Chapter 13 plan and Plaintiffs' subsequent discharge.

It is undisputed that Defendant's claim is secured by the realty and that the mobile home is located on the realty. Plaintiffs have resided in the mobile home since April 2000. Plaintiffs and Defendant hotly dispute whether the mobile home is part of the realty or whether the mobile home is personal property. If the mobile home is part of the realty, then Defendant's claim is protected by §1322(b)(2). If the mobile home is not part of the realty, then Defendant's claim is secured by "raw land" and is not

---

[15] Universal American Mortgage Co. v. Bateman, (In re Bateman), 331 F.3d 821 (11th Cir. 2003).

9

protected by §1322(b)(2).

In determining whether the mobile home is real or personal property, the Court must look to applicable state law, which in this case is Georgia law. Kennedy v. Lane Foods, Inc., (In re Kennedy), 192 B.R. 282, 287 (Bankr. M.D. Ga. 1996).

A claim secured by "raw land" is not protected by §1322(b)(2) even though a mobile home which was financed by a third party is placed upon the land. Beacham v. Somma Investments, Inc., (In re Beacham), 2006 WL 565929 (Bankr. M.D. Ga., Feb. 17, 2006); In re Shelnutt, Ch. 13, Case No. 94-30602 (Bankr. M.D. Ga., May 12, 1995).

The date for determining whether Defendant's claim is secured by Plaintiffs' principal residence, and thus protected by §1322(b)(2), is the date that Taylor Bean made the loan to Mr. Williamson. That date is April 27, 2000. USDA v. Jackson, 2005 WL 1563529 (M.D. Ga., July 1, 2005).

In Walker v. Washington, (In re Washington),[16] the Eleventh Circuit considered whether a double-wide mobile home had become part of the realty upon which it was placed. The circuit court stated:

> Under Georgia law, a mobile home is initially considered a vehicle which must be given a certificate of title. Ga. Code Ann. § 40-3-20 (1982). In order to perfect a security interest in a vehicle, the lienor's interest must be noted on the title. Ga. Code Ann. § 40-3-50(b) (1982). Georgia law

---

[16] 837 F.2d 455 (11th Cir. 1988).

10

also provides, however, that an object which is intended to remain permanently in place, even if it is not actually attached to the underlying land, is a fixture which constitutes a part of the realty. Ga. Code Ann. § 44-1-6(a) (1982). Therefore, a mobile home may lose its character as a vehicle and become part of the land on which it is placed. 1969 Op. Att'y. Gen. No. 69-316. If such a transformation occurs, then a security interest in the home may be perfected under Georgia real estate law. *Id.*

Georgia courts have used three factors in analyzing whether an object is personalty or realty. *Homac, Inc. v. Fort Wayne Mortgage, Co.*, 577 F. Supp. 1065, 1069 (N.D. Ga. 1983). First, the Court looks to the degree to which the object has become integrated with or attached to the land. Under Georgia law, if an article cannot be removed from the land without suffering "essential injury," it is considered a fixture. *Id., citing Wade v. Johnston*, 25 Ga. 331, 336 (1858).

Second, a court must consider the intention of the parties with regard to the status of the object. *In re Janmar, Inc.*, 4 B.R. 4, 9 (N.D. Ga. 1979). An item will remain personalty if the parties so contract, even if the item is permanently affixed to realty.

Third, the court determines whether there is unity of title between the personalty and the realty at the time the object allegedly became part of the land:

> When the ownership of the land is in one person and the thing affixed to it is in another, and in its nature it is capable of severance without injury to the former, the fixture can not, in contemplation of law, become a part of the land, but must necessarily remain distinct property to be used and dealt with as personal estate.

*Homac*, 577 F. Supp. at 1070, *citing Holland Furnace*

11

*Co. v. Lowe*, 172 Ga. 815, 159 S.E. 277 (1931).

837 F.2d at 456-57.

Varying weight may be given to the three factors according to the circumstances of the case. The trier of fact looks to the intent of the parties vested with ownership and their use of the article in question to determine whether or not it becomes a permanent part of the realty. Manderson & Assoc., Inc. v. Gore, 193 Ga. App. 723, 389 S.E.2d 251, 260 (1989) cert. denied.

Plaintiffs argue that Georgia Code § 8-2-181[17] overrules In re Washington. From May 31, 2003, until July 1, 2006, § 8-2-181 provided in part that a mobile home or a manufactured home shall constitute personal property until it is converted to real property (1) by being permanently affixed on real property and (2) by the owners of the home and all security interest holders executing and filing a Certificate of Permanent Location in the appropriate public records. It is undisputed that no certificate on Plaintiffs' mobile home was executed or filed. Section 8-2-181 became effective on May 31, 2003. Taylor Bean made the loan at issue to Mr. Williamson in April 2000. The date of the loan is the critical date in determining whether Defendant's claim is protected by §1322(b)(2). The Court is persuaded that § 8-2-181 does not determine whether Plaintiffs' mobile home is part of the realty for purposes of §1322(b)(2).

---

[17] O.C.G.A. § 8-2-181 (2004) (amended 2006).

The Court will now apply the three factors listed in In re Washington to the facts presented.

(1) The degree to which the mobile home is integrated with or attached to the realty.

Under Georgia law, if a mobile home cannot be removed from the realty without suffering essential injury, then the mobile home has become a fixture upon the realty. On April 27, 2000, Mr. Williamson executed a mortgage pledging the realty as security for the obligation now owned by Defendant. The mobile home has been Plaintiffs' principal residence since April 2000.

By April 27, 2000, the mobile home had been moved onto the realty, the tongue[18] was removed and placed under the mobile home, and the wheels and axles were removed. The mobile home was sitting on concrete blocks. Electric service was being "hooked up." The Court is persuaded that Plaintiffs were residing in the mobile home around the end of April 2000. About 1 ½ years later, skirting consisting of stacked concrete blocks was placed around the bottom four sides of the mobile home. There is a one-inch gap between the top of the blocks and the bottom of the mobile home.[19] Plaintiffs testified that the mobile home could easily be moved from the realty

---

[18] The tongue is used to tow the mobile home.

[19] Mr. Williamson testified that the county requires a one-inch gap so that the mobile home can "flex."

in April 2000.

    (2)    <u>The intention of the parties</u>

The intention of the parties is the primary factor in determining whether a mobile home has become a permanent part of the realty.[20]  Plaintiffs testified that they did not intend for the mobile home to become part of the realty.  Plaintiffs testified that the mobile home can be moved without damage to the realty.

Ms. Williamson testified that insurance on the mobile home was included in the monthly mortgage payments to Defendant.[21]  This shows that Plaintiffs and Defendant understood that the mortgage was secured by the mobile home.

Plaintiffs' initial proposed Chapter 13 plan provided that confirmation would extinguish the second lien on their residence which was held by the Bank of Danielsville.  This shows that Plaintiffs understood that Defendant held a first priority mortgage on their mobile home.

Mr. Williamson testified that Plaintiffs decided about one and one-half years ago to move to another location because of concerns about their neighborhood.  Mr. Williamson testified that the mobile home could be moved or could be sold along with the realty, depending on what the purchaser wants.

---

[20] <u>Manderson & Assoc., Inc.</u>, 389 S.E. 2d at 260.

[21] Ms. Williamson testified that Plaintiffs now make their insurance payments to a third party.

Since purchasing their mobile home, Plaintiffs have made a number of improvements to and around the mobile home. Within the past two years, a new front porch and a new rear screen porch were built onto the mobile home. Stucco was applied to the concrete blocks which skirt the bottom four sides of the mobile home. The realty has been landscaped and a gold fish pond has been installed. Photographs show that the mobile home and surrounding area are well maintained and surrounded by shrubs, hardwood trees, and a painted wood rail fence. The yard is well maintained. Near the mobile home is an aluminum carport. A small stucco building is located near the mobile home.[22] Plaintiffs' clearly take pride in the mobile home which has been their residence for eight years.

The Court, sitting as the trier of fact in this trial, can only conclude from the evidence that Plaintiffs intended the article in question, the mobile home, to be part of the realty. Plaintiffs' improvements and upkeep of the mobile home demonstrate that they have always intended for it to be their permanent residence.

(3)   <u>Whether there was unity of title between the mobile home and the realty at the time the mobile home allegedly became part of the realty</u>.

Plaintiffs purchased the mobile home in January 2000. Plaintiffs are shown as the "owners" on the Certificate of Title. In April 2000, Defendant's predecessor, Taylor Bean, made a loan to Mr. Williamson. Mr. Williamson executed a mortgage

---

[22] The building may be a dog house or a cover for the well.

pledging the realty as security for his obligation.  Ms. Williamson did not execute the mortgage and her name is not shown on the mortgage.  Still there was unity of title because Mr. Williamson had an interest in both the realty and the mobile home.

The Court is persuaded that Plaintiffs' mobile home was part of the realty in April 2000 for purposes of §1322(b)(2).  The Court is persuaded that Defendant's claim is protected by §1322(b)(2) and that Defendant's mortgage survived the confirmation of Plaintiffs' Chapter 13 plan and their subsequent discharge in bankruptcy.

An order in accordance with this memorandum opinion will be entered this date.

DATED this 30th day of May, 2008.

/s/ Robert F. Hershner, Jr.
_____
ROBERT F. HERSHNER, JR.
United States Bankruptcy Judge